We're ready to hear argument in our first case, United States v. Zayyad. Mr. Carpenter, we're glad to hear from you. Thank you, Judge Agee. May it please the Court. Our argument here is based on the following principle. When the government relies on nothing more than a chain of inferences to support an element of its case, a defendant must be permitted to introduce evidence that rebutts one of the links in that chain. Under that principle, the District Court here committed reversible error by excluding the gray market evidence from the second trial in this case. When that evidence came in at the first trial, the government didn't object, but then the jury raised questions about knowledge and was ultimately unable to reach a verdict. It was only after this adverse outcome that the government first moved to exclude this evidence. This evidence was critical to Mr. Zayyad's defense, as the government learned during the first trial, because of the way the government itself sought to prove the knowledge element in this case. The government admits now and admitted at trial that it lacks any direct evidence that Mr. Zayyad knew these pills were counterfeit. There were no inculpatory statements made during the recorded conversations or upon his arrest. There were no e-mails, texts, or other documentary evidence indicating his knowledge. Absent that type of evidence, the government had to prove its case circumstantially by asking the jury to infer that simply because Mr. Zayyad was selling these pills illicitly on the underground market, he must have known that they were counterfeit. But the problem with that theory is that not all pills sold illicitly on the underground market are counterfeit. Some of them, as the gray market evidence established . . . The Supreme Court was making its bench ruling. It identified two issues, the first being what you described, whether or not these items were counterfeit, and the second was the defendant's knowledge. In the course of the argument, and I don't know whether you were counsel below or not . . . I wasn't. I don't see any place where Mr. Zayyad raised the issue of knowledge as a basis for being allowed to conduct this cross-examination. The question arises is whether or not that issue is waived because the issue of knowledge was never raised. If it was, you can tell us where it was. Certainly, Judge Agee, I think it was raised and sufficiently preserved, and I think that arises from the in limine filings themselves. If you look at the government's motion, it's at Joint Appendix page 570 to 571, that motion concedes the connection here between the gray market evidence and the defendant's knowledge. The government writes in its motion, the only potential relevance of this evidence may arise if the defendant were to testify during the questioning of the company representatives on this gray market issue would be relevant. The connection between gray market evidence and knowledge is conceded by the government. When we reply to that . . . I'm guessing that when the government gets up here, it's going to say that that was a condition precedent or something to that effect that was never met, and that it was incumbent upon you or counsel representing Mr. Zayyad in the trial court to have raised that issue on your end. Well, Judge Agee, when we responded to that, we made clear that our view is that the condition precedent is impermissible in this case. There's no support in the rules of evidence or in the case law anywhere that the admission of otherwise relevant evidence can be conditioned on a defendant's decision to waive his constitutional right not to testify. That's the problem. It's not relevant unless there's a sufficient foundation for allowing the evidence to come in to begin with. Well, Judge Diaz, I think that's not correct under Rule 401. If you look at the rules, that's the relevancy rule in the federal rules. It doesn't require a conclusive showing as to a disputed issue. It says that a piece of evidence can come in if it makes the resolution of the disputed issue, which in this case is Mr. Zayyad's knowledge, more or less probable. Here, that standard is satisfied because if you know that some genuine authentic pills are diverted from the traditional supply chain and are sold illicitly on the underground market . . . Who's the you? The jury. Well, but it's . . . Well, because . . . The foundation that I'm talking about is not the jury in the abstract, but your client. Your client has to know that. That's certainly true, but the jury can draw that inference . . . But they'd be speculating. If they didn't . . . Well, Judge Diaz, they're speculating on the other end. We're dealing with a case where there is no direct knowledge here, or no direct evidence of knowledge. We're dealing with a battle of the inferences. Right, but the inferences that the government raised in their case were at least reasonable inferences that were logically connected. The problem with this evidence is that there's no connection to the defendant to show that, in fact, he understood that there was a gray market to begin with. So how in the world can a jury reasonably infer . . . I understand that they had some questions in the first trial about that issue. That doesn't make that a reasonable question or a reasonable inference. Well, Judge Diaz, I think that it's actually a parallel inference here. And you suggested that there was some connection between the government's evidence and the defendant, but that's not right. The way the government went about proving . . . If that wasn't right, then I guess there should have been a motion in Lemonade to exclude that evidence, but there wasn't, was there? Well, there wasn't a motion in Lemonade to exclude it because it's relevant under 401. Now, there was a motion under Rule 29 to say that that evidence wasn't sufficient to get you all the way there, but it's certainly relevant. Let's give you that there was an abuse of discretion under 401. What do you do with the 403 ruling by the judge? Sure. Judge Floyd, Rule 403, the court does have some discretion under that, but this court has recognized repeatedly that Rule 403 tilts in favor of inclusion of evidence rather than exclusion. So if you look at the balance in this case, the probative value of this evidence is high because, as I said, there is no direct evidence here. We're dealing with a battle of inferences. And so the probative value is high. On the other side of the equation, Judge Conrad cited the potential for juror confusion or the potential for a waste of time, but those factors are belied by the record of the first trial. The jury wasn't confused. It raised specific questions about knowledge, and that was precisely the issue it should have been focused on because that's where there was a lack of evidence here. But the trial judge only limited the cross-examination in the government's case in chief. You were not hog-tied in so far as calling witnesses, even the same witnesses that testified in the government's case in a defense case, without your client having to testify. It is true that our client could have testified, and that at that point, based on the premise of the government's motion, the additional evidence could have come in. But our view first is that there's a due process problem with conditioning otherwise relevant evidence on a defendant's waiver of his constitutional right not to testify. What if, go ahead. I'm saying, you could have called the pharmaceutical witnesses without having to call your witness in your case. Judge Floyd, if we had called those same witnesses up and sought to ask them the same question, Judge Conrad would have said, I've already decided this issue, that evidence isn't relevant unless and until Mr. Zia himself testifies as to his state of mind. I'm not delaying on that. All you have to do is make, or not you, generically, would be to make a proffer on that and preserve that for appeal, as Judge Floyd has indicated. That was your option. I thought that Judge Conrad had indicated that he would consider that. I don't believe he indicated that he would consider that. There's certainly no indication that he would have considered admitting this evidence short of Mr. Zia testifying. Imposing that condition, we believe, violates due process. If there had been some other way to get evidence of your client's knowledge of the gray market as the foundation, we wouldn't have this argument here today? That's probably right. No one disputes there is no direct evidence as to his knowledge either way. I'm not sure about that. I don't know exactly what avenues were explored. The government's initial thrust is that it required your client to testify, but in their brief they suggest some other methods for introducing evidence that would have shown knowledge, or at least inferred knowledge. First, that deviates from their position at trial, which was the only way to get this in is through his own testimony. The court can rest assured if there were evidence either way as to his knowledge or awareness, either inculpatory or exculpatory, one of the parties would have introduced it. We're dealing with a situation where there is no direct evidence, so the jury has to make an inference. I don't know if we know that. There could have been a proffer as to this is how we're going to prove knowledge. There may very well have been a trial decision or no decision that we don't want to pursue this because the risk of putting on this particular witness other than the defendant to prove knowledge would just open up too many cans of worms and it's not worth the risk. We don't know any of those things because none of that's in the record, but had there been a proffer with regard to knowledge we would be able to evaluate it now. It's certainly true that had there been evidence the defendant could have sought to do it, but regardless the record we're dealing with is one in which there is no evidence either way. To go back to a point that Judge Diaz raised a minute ago about whether the government's evidence somehow tied to Mr. Zayad's knowledge, I think it doesn't and that's why we're dealing with inferences that are equally reasonable here. The way the government sought to prove knowledge in this case, it introduced expert testimony from the folks at Pfizer and Eli Lilly to say in the traditional supply chain this is how pills are distributed. They come in bottles that are sent to wholesalers that have lot of literature about the warnings, etc. And then it said on the other hand Mr. Zayad was distributing these pills illicitly on the underground market. Therefore it asked the jury to infer first that Mr. Zayad was aware that pills were distributed a certain way in the regular distribution chain. There was no evidence, direct evidence of his knowledge. So if the government's foundation theory were correct, it lacks foundation for its own theory because they show nothing other than an inference that ties Mr. Zayad's knowledge, that shows Mr. Zayad as having knowledge of how the regular distribution chain works. Our view is that if they can show how the regular distribution chain works, we should be able to introduce evidence that says in certain circumstances both of these companies have had problems where genuine pills are diverted from that intended supply chain and are distributed illicitly on the underground market in a way that looks exactly the same way that these counterfeit pills are distributed. Once you know that, then the jury is asked to infer, well do we think Mr. Zayad believed that the pills were counterfeit or do we think he believed that they were real? Because there are two options. The pills that are distributed underground in the same way that he distributed them can be real, they can be counterfeit. The government had to prove beyond a reasonable doubt that Mr. Zayad knew they were counterfeit. And it didn't do that. The government could have sought a lesser charge here. It could have sought a misbranding charge based simply on the fact that these pills were prescription pills that were distributed without a prescription. But that's a lesser charge, it's a misdemeanor, and it doesn't require knowledge that the pills were counterfeit. Had the government sought that lesser charge, it would have been a slam dunk case. Here it chose to pursue the bigger, badder charge and it needs to be able to show knowledge that the pills were counterfeit. In our view, the evidence doesn't support that and he should have been able to introduce the rebuttal evidence that undermined the government's theory of the case. I'll reserve my last ten seconds. Thank you. But you've got some more time for rebuttal if you'd like to use it. Thank you. Thank you very much. Mr. Lieberman? Mr. Lieberman, why don't you start with that last point that the counsel made that the government in this case was relying on equally speculative inferences to arrive at a guilty verdict. May it please the court, Your Honor, yes. The government's evidence in this case was circumstantial as to knowledge, but all of the facts rested on things that were indisputably within Mr. Zayad's mind at the time because they all related to his own actions, what he was doing in 2010. So our case for knowledge rested on the fact that Mr. Zayad was receiving these pills from a Chicago supplier who had subsequently been arrested, hundreds of these pills, transporting them in the dead of night to a convenience store in Ziploc bags and gas station paper towels. The pills were differently colored, different shades of yellow and blue, and that they were being sold at a rate significantly below what one would, what genuine Viagra, genuine Cialis would fetch in this country. So all of those facts were unquestionably within Mr. Zayad's mind because they all related to his own actions. Now compare the government's case to the questions that defense counsel wanted to ask of the government's witnesses during cross-examination. The excerpts of these are found at pages 574 through 645 of the joint appendix. Defense counsel wanted to ask the Pfizer witness about the Mexican nationals working at the Mexico plant, quote, how do you know whether these foreign employees didn't actually divert the pills? He wanted to ask about quality control issues at the Saudi Arabian plant. How often are you doing inspections? Who is doing background checks of your plant managers at your Japanese plant? And what about DHL workers? Is there a possibility that they could be diverting the pills before they get on the plane and ship it around to wherever the destination is? The problem with those questions is that the facts that defense counsel is trying to elicit have no obvious connection to what was going around in Mr. Zayad's mind in 2010. Was he thinking about the Mexico plant or the Saudi Arabia plant when he was trafficking these pills in and around Charlotte? Perhaps that connection could have been made. But the problem here is that it wasn't. And that's why the district court appropriately excluded this evidence. Because again, when we're thinking about when the jury is asked what was in the defendant's mind, they can't crack open his head. They have to rely on inferences. But those are only going to be the facts, the information, and the events that are within Mr. Zayad's head at the time. Everything else is irrelevant. And this is why I think some of the tax evasion cases that the government cited to on pages 18 through 20 of our brief are relevant. Because in those cases, the jury was asked, was the defendant willfully misstating his income on a tax return? So an event that occurred after he filled out the tax return, irrelevant. What somebody else thought about the disputed monies in that case, irrelevant. The district courts appropriately excluded those in those cases. The district court here did as well. There was a willful blindness charge given to me. There was, Your Honor. And I think that's relevant, at least as to the sufficiency point, is because even though the government didn't have, you know, the smoking gun in this case, the jury was allowed to line up inferences from Mr. Zayad's undisputed actions and say, well, in light of everything that we had before, was Mr. Zayad deliberately blind to the fact before him? And I think that was a reasonable inference in this case, given both how he was distributing the pills. And remember, this is a convenience store that is selling, you know, over-the-counter Tylenol and Advil in packages, and these pills were coming in Ziploc bags and gas station paper towels, and they were differently colored. All things that he would have seen. And so I think on the sufficiency point, we easily clear that very minimal hurdle. Going back to the evidentiary question, Your Honor asked about the Rule 403 point. So, you know, the government does not concede that this evidence has any probative value. But even if it did, I don't think Mr. Zayad can show an abuse of discretion in the Rule 403 balancing. Because all of the questions that defense counsel was asking about, you know, this background checks of the Japanese workers, Saudi Arabia, quality control measures, you know, asking the jury to inquire into those things seems, at least to me, to be far afield of the question that the jury instructions asked it to decide what was going on in Mr. Zayad's mind. And as a result, no abuse of discretion in that 403 balancing. The last point on the merits is I just want to emphasize how narrow the district court's ruling was. Page 660 of the Joint Appendix, I'll prohibit the defendant from cross-examining with respect to the gray market. And that flowed from an equally narrow motion in Limine. Page 571 of the Joint Appendix. The government only asked for an order directing defense counsel to refrain from attempting to raise, during the government's case in chief, the issue of the gray market. So Mr. Lieberman, if the only way for the defendant in this case to make that necessary connection that the government felt was required was through his testimony, do we have a problem? Well, I disagree with that. Well, but let's say that's the case. Do we have a problem? No, because this is a pure fact. Was there an adequate factual foundation to establish what was going on inside his mind? And the fact that the only way that he could have presented that foundation or connection would be through his trial testimony presents no due process concern. If that's the only evidence available to the defendant, I think it's a straight line evidentiary issue, not a due process problem. But first of all, I disagree with my friend on the other side's reading of the government's motion in Limine. We offered up the example of the defendant testifying, I think, as an illustrative example as to how he could lay the foundation. But there are other ways that he could have done so. Perhaps he could have called his Chicago supplier, and the Chicago supplier would have offered testimony about what he told Mr. Zayad. And maybe some of those statements would have been illustrative of what may have been going on in Mr. Zayad's state of mind at the time. If the Chicago supplier said, I told him these were authentic, they were genuine pills, that may be sufficient to lay the foundation. Maybe Mr. Lassner, the convenience store manager, could have offered similar testimony. And as the government posited in our brief, communications, invoices, anything else that may be available. So it's not the case that Mr. Zayad had only one way to do this. Now, the problem here is I just don't think that evidence existed in this case, but that's an evidentiary problem. But going back to the narrowness of the court's order, it only pertained to cross-examination. Once the government rested its case, the order had no effect. This goes to a point that Judge Floyd made. Under the terms of the district court's order, Mr. Zayad could have called any witness he wanted, could have elicited any testimony he wanted, could have presented any fact he order. And that is critical, both on the merits, because this court traditionally affords tremendous deference to district courts in how to structure their proceedings. And all that this lemonade ruling did was channel the gray market issue from the first half of the case to the second half of the case. Do you think that if the defendant had called these witnesses without making that connection that we just talked about earlier, that Judge Conrad would have allowed that testimony? It's perhaps that he, perhaps the AUSA would object, would have objected. Perhaps Judge Conrad would have issued a second ruling now restricting this evidence in toto. And then we'd have a different case. I think there, I'd be happy to defend that case. I think there are good arguments to defend that type of order. But that's not the order that's under review before this court. The order under review before this court is much more circumscribed. It only pertained to the government's cross-examination. And that's only, the government's motion only asked for that relief. And so that cannot be an abuse of discretion given this court's traditional deference to district courts' ability to manage their proceedings. It's also relevant on the government's last argument, which is the harmlessness point. Under either Rule 403 or a plain error type standard, which we think is the more appropriate one here, this court may not reverse unless it finds that the district court's ruling impaired Mr. Zayad's substantial rights. The rights that Mr. Zayad is claiming here is the right to present a defense, his lack of knowledge, and the right to advance evidence in support of that defense. Again, under the terms of the district court's ruling, he could have done all of that in the defense case in chief. Now, the defense did not do that here, but that was a choice of the defense, not the result of the district court's order. So there is no way possibly to show any impingement on Mr. Zayad's right to present a defense or his right to present evidence in support of that defense. Go back to the standard of review. What do you think the standard of review is? We think that plain error is appropriate here for many of the reasons that Judge Agee started this, his questions, because if you look at the response to the government's motion in Luminae, 651 through 653, there's no discussion of knowledge. There's no mention of tying the issue of knowledge back to this line of cross-examination that Mr. Zayad wanted to present. And the district court is entitled to look at those pleadings and accept Mr. Zayad's questioning is admissible, is on the basis of are these pills actually counterfeit or genuine? It was incumbent on Mr. Zayad to inform the district court of this alternative basis of relevance because this court has said many times over and over again that preservation of one ground of admissibility will not preserve an alternative ground. And I know that the briefs on the other side mentioned that knowledge was an issue in the first trial and in the second trial, but that Judge Conrad is not required to flip through the transcript and hypothesize other bases for admissibility. The district court judge is entitled to look at the defense pleadings and accept the defense arguments on their face. And I think if this court reads that three or four page motion, it will struggle to find the issue of knowledge mentioned. I think under Rule 103, there's not been an adequate preservation of this grounds for admissibility and we are here under plain error. So whether it's under plain error or on the merits or on this final harmless point, I think this court should affirm. I'm happy to address any more questions, but otherwise, again, we'd ask that the court affirm. Thank you. Thank you very much. Mr. Carpenter, you've got some time in rebuttal if you wish to do so. Thank you. I want to respond to a few things. First, on the question of whether something short of Mr. Zayad's testimony would have been enough to open the door, so to speak, to this testimony. The government's position now is that he could have introduced these other witnesses that could have talked about their interactions with him to establish a connection. The problem is in the government's in limine motion at page 571, footnote 7, the government expressly addresses this issue and says that that's not sufficient. It says the defendant may seek to put on hearsay evidence through others regarding his exculpatory claim that he believed he was dealing in genuine prescription pills. Such exculpatory evidence is inadmissible hearsay that should be excluded. The government's very clear position in the trial court, which Judge Conrad endorsed, was that the only way to get this evidence in is for Mr. Zayad to first testify. I'm sorry. Go ahead. How did Judge Conrad endorse that view? He said at Joint Appendix page 660, I grant the government's motion in limine. There is no . . . That doesn't bind the . . . even that footnote doesn't bind the defense to their evidentiary presentation. It doesn't limit them in any way. I don't get that. Well, I think it certainly does because the premise of the government's motion is that the only way to get this in is if he first testifies. Anything short of that . . . That's their premise, but then it's up to the defense to challenge that premise. Well, and the defendant challenged that in its response in the limine motion when it said, look, this . . . and that's the other point that my colleague just finished with, which is that you have to accept the arguments in the limine filings on their face. We think that's true. And on its face, the government says, this evidence is relevant to knowledge, but only if he testifies. In our response, we said, there's a connection to knowledge . . . Well, you certainly . . . I mean, this is probably unlikely, but take the supplier in Chicago or whatever city that person was in, in the unlikely event that you could convince them to come down and testify, it's not inconceivable that their testimony would be an admission against penal interest, which would be an exception to the hearsay rule, and you could have argued just as an example for that. So, I mean, it's not that there weren't other possibilities. We don't know what they were. Judge Agee, I absolutely agree. If there were other evidence available, then we might be dealing with those additional issues, but they're not present in this record where we have only what we have. There wasn't this additional evidence out there, and we have the government's motion, which was endorsed, again, by the district court, and I think the premise of that and the rationale for the district court's ruling was clear. My colleague on the other side mentioned that, well, this is within the district court's discretion in managing the case, that you could have moved it from cross-examination to the defense case. That's certainly true. The district court does have discretion in managing his case, but that's not what happened here. The premise of Judge Conrad's ruling and of the government's motion was not this evidence is more appropriate during the defense case. It was this evidence is irrelevant. If the evidence is irrelevant during cross-examination, it's irrelevant during the defense case as well. This was not an exercise of the court's discretion to manage when evidence comes in, and that makes sense because this evidence was within the scope of the direct examination, which is exactly what cross-examination is supposed to be. These witnesses each testified, this is how genuine pills are distributed. They come in bottles. They go through wholesalers, et cetera. Within the perfect rebuttal to that is, well, is that the only way that genuine pills ever make it to market? And the answer is no. Sometimes they're diverted from their intended traditional supply chain and end up being sold on the underground market in just the same way that these pills were sold in this case. Go back to a point that Judge Diaz, you led with with the government's counsel, asking what the connection was, and was the government's case equally speculative here? The government's counsel answered that, well, these things were indisputably within Mr. Ziad's mind, but that's just not true. The way that the traditional supply chain works is not something that is necessarily within Mr. Ziad's knowledge. There's no showing that he's aware that these pills are only distributed in bottles that have lot numbers and with prescriptions. They rely on the jury to infer that he must have known that, simply because he's dealing with these pills. We think that an equally plausible inference is, because he's dealing with these pills, he's also aware that there are problems of diversion that all of these companies have faced, and that as a result of those problems, pills end up being distributed on the underground market that are genuine pills, not counterfeit pills. And Judge Floyd, your question about willful blindness, there certainly was a willful blindness instruction. I think it's important to note that that instruction was present in the first trial as well, and the jury was unable to find that Mr. Ziad was willfully blind. I think the reason for that is that the willful blindness finding relies on the same flawed set of inferences that the pure knowledge finding would rely on. I think, unless there are further questions, that's all I have, and I would thank the Court for its time. Thank you very much, Mr. Carpenter. We appreciate the arguments from both counsel.
judges: G. Steven Agee, Albert Diaz, Henry F. Floyd